1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT
8          FOR THE DISTRICT OF ARIZONA
9
10   ESFANDIAR NIKBAKHSH-TALI,        )   No.  CV 07-1526-PHX-NVW (BPV)
                                      )
11             Petitioner,            )
                                      )   **REPORT AND RECOMMENDATION**
12   vs.                             )
                                      )
13   MICHAEL B. MUKASEY, et al.,      )
                                      )
14             Respondents.           )
     ─────────────────────────────────)
15
16        On August 8, 2007, Esfandiar Nikbakhsh-Tali, ("Petitioner"), currently
17   confined in the Eloy Detention Center in Eloy, Arizona, filed a Petition for Writ of
     Habeas Corpus by A Person in Federal Custody ("Petition"), pursuant to Title 28,
18   U.S.C. § 2241.
19
20        On September 4, 2007, the District Court denied Petitioner's Motion for
     Emergency Adjudication, and, pursuant to the Rules of Practice of this Court, referred
21   this matter to the undersigned Magistrate Judge for a Report and Recommendation.
22
          On December 13 2007, the Magistrate Judge issued a Report and
23   Recommendation, recommending that the District Court deny the Petition for Writ of
24   Habeas Corpus.  (Doc. No. 20.)
25
          Petitioner filed an Objection, along with additional evidence on December 23,
26   2007.  (Doc. No. 21.)  The District Court ordered additional briefing and heard oral
27   argument on the matter on February 14, 2008.
28

1    The District Court heard argument and ordered additional briefing, and took
2    the objections to the Report and Recommendation under advisement. (Doc. No. 25.)
3    On April 2, 2008, the District Court rejected the Report and Recommendation,
4    referring the matter back to the Magistrate Judge to "consider whether, in light of this
5    new evidence, Petitioner's removal will likely be effectuated in the reasonably
6    foreseeable future." (Doc. No. 30.)

7    For the following reasons, the Magistrate Judge recommends that the District
8    Court grant Petitioner's Petition for Writ of Habeas Corpus.

9    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

10   Petitioner is a citizen and native of Iran. (Ex. 1.)[1]  On June 16, 1972,
11   Petitioner's status was adjusted to that of a lawful permanent resident pursuant to
12   Section 245 of the Immigration and National Act ("INA"), 8 U.S.C. § 1255. (Id.)

13   On February 3, 2003, Petitioner was convicted in the California Superior
14   Court, Santa Clara County, upon entry of a guilty plea, of one count of Inflicting
15   Corporal Injury on Spouse/CoHabitant/Former Spouse or Fiancee, in violation of
16   California Penal Code § 273.5(a). (Ex. 3.)  On August 27, 2003, Petitioner was

---

[1]    Exhibit numbers 1 through 15 in this Report and Recommendation are references to the exhibits attached to Respondent's "Response in Opposition to Petition for Writ of Habeas Corpus" previously filed with this Court under *Esfandiar Nikbakhsh-Tali v. Alberto Gonzales, et al.*, CV 06-2121-PHX-NVW (BPV), (Doc. No. 19).

Exhibit numbers 16 through 19 in this Report and Recommendation are references to the exhibits attached to Respondent's "Response in Opposition to Petition for Writ of Habeas Corpus" (Doc. No. 17) from the immediate litigation, CV 07-1526-PHX-NVW (BPV)

All lettered exhibits make references to the exhibits found attached to the instant Petition.

1   sentenced to four months imprisonment in the county jail.  (Id.)  On December 3,

2   2003, after violation of probation, Petitioner was sentenced to two years

3   imprisonment.  (Id.)

4        On August 19, 2004, Petitioner was referred to Immigration and Customs

5   Enforcement ("ICE") by a referral from the California Department of Corrections

6   ("CDC").  (Ex. 2).  On or about October 4, 2004, the United States served Petitioner

7   with a Notice to Appear in removal proceedings, charging Petitioner as subject to

8   removal pursuant to section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. §

9   1227(a)(2)(A)(iii), in that he, at any time after admission, was convicted of an

10  aggravated felony as defined in section 101(a)(43)(F) of the Act, and pursuant to

11  section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i), in that he, at any time

12  after admission, was convicted of a crime of domestic violence.  (Ex. 7.)

13       On October 4, 2004, Petitioner was served a Notice of Custody Determination,

14  informing Petitioner that pursuant to section 236 of the INS, and 8 C.F.R. 236, the

15  reviewing officer had determined that Petitioner was to be detained pending a final

16  determination by the immigration judge ("IJ") in his case.  (Ex. 8.)  Despite several

17  requests, Petitioner's detention status has not changed since this initial determination.

18       On October 20, 2004, Petitioner, represented by counsel, appeared in front of

19  an IJ for a removal hearing.  (Ex. 10, p.1) Petitioner admitted the factual allegations

20  and charges of removability, and the IJ found Petitioner subject to removal as

21  charged.  (Id, p.2.)  Petitioner declined to designate a country of removal, expressing

22  a fear of return to Iran.  (Id., p.3.)  Petitioner moved to apply for withholding, and for

23  relief under the Convention Against Torture ("CAT").  (Id.)  Additionally, Petitioner

24  informed the IJ that his criminal conviction was being challenged as well, so that there

25  was a possibility that he might be qualified for 240A relief if that were to occur.  (Id.)

26       Petitioner's removal hearing, after a short continuance due to a medical

27  emergency and subsequent substitution of counsel, was set for November 24, 2004,

28                                         -3-

1   and was continued at that time due to the late submission of filings and inadequate

2   time on the court's calendar to complete the hearing.  (Id., p.7, 9, 21.)  The IJ entered

3   his decision on January 20, 2005, ordering Petitioner removed to Iran, denying

4   Petitioner's application for Asylum, denying Petitioner's application for withholding

5   of removal, and denying Petitioner's application for deferral of removal under the

6   Convention Against Torture.  (Ex. 12.)

7        The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal on

8   April 26, 2005.[2]  (Ex. 13.)  Petitioner filed a Petition for Review and Request for Stay

9   of Removal with the United States Court of Appeals for the Ninth Circuit on May 4,

10  2005.  (Ex. 14.)  On that same date, the Ninth Circuit granted Petitioner a temporary

11  stay of removal, pending further briefing.  *See Nikbakhsh-Tali v. Gonzales*, No. 05-

12  72621.

13       On September 6, 2006, the Petitioner filed his first Petition for Writ of Habeas

14  Corpus before this Court.  *See Nikbakhsh-Tali v. Long, et al.*, CV 06-2121-PHX-

15  NVW, Doc. No. 1.  (See also Ex. I)

16       On December 29, 2006, Petitioner filed a Motion to Dismiss his Stay of

17  Removal with the Ninth Circuit Court of Appeals.  (Ex. 16.)  The Ninth Circuit

18  construed Petitioner's "motion to dismiss stay of removal" as a "motion to withdraw

19  the previously-filed motion for stay of removal pending review," and, so construed,

20  granted the motion, and vacated the court's July 29, 2005 order, further directing the

21  temporary stay of removal, and, if applicable, the voluntary departure no longer in

22  effect.  (*See Nikbakhsh-Tali v. Gonzales*, No. 05-72621, Docket Entry January 17,

23  2007; Ex. J)

24

25        [2]      Petitioner's appeal to the BIA is not included in the
26              record submitted to this Court, but a review of the
                decision of the BIA indicates that he did not challenge
27              his previous concession of removability.

28                                    -4-

1    On May 10, 2007, this Court entered an order to show cause why Petitioner's
2 federal habeas should not be dismissed, granting Petitioner a period of time to file a
3 writing with this Court addressing the Ninth Circuit Court of Appeals order dated
4 January 17, 2007, and the conclusion reached by this Court that Petitioner has entered
5 the "removal period" under 8 U.S.C. § 1231, and, subsequently, has not exceeded the
6 presumptively reasonable period of detention.  (CV 06-2121-PHX-NVW,  Doc. No.
7 20.)

8    On May 25, 2007, Petitioner filed a response to the order to show cause.  (CV
9 06-2121-PHX-NVW,  Doc. No. 21.)

10    On June 4, 2007, the Magistrate Judge recommended that the District Court
11 deny Petitioner's Petition for Writ of Habeas Corpus, finding that Petitioner's
12 detention during the removal period, had not exceeded the presumptively reasonable
13 period, and Petitioner had not met his burden of showing that there is no significant
14 likelihood of removal in the reasonably foreseeable future. (CV 06-2121-PHX-NVW,
15 Doc. No. 24.)

16    No objections to the Report and Recommendation were filed and the District
17 Court entered an order accepting the Report and Recommendation, and denying the
18 Petition for Writ of Habeas Corpus.  (CV 06-2121-PHX-NVW, Doc. No. 25.)

19    On March 1, 2007, Petitioner's travel application was submitted to the
20 Embassy of Pakistan.  (Ex. 17) Respondent advises that the reason the request was
21 submitted to the Embassy of Pakistan is that Iran does not have an embassy in the
22 United States, therefore, Iran travel documents are submitted through the Embassy of
23 Pakistan.  (Response, p.3.)

24    On December 12, 2007, the Magistrate Judge issued a Report and
25 Recommendation, finding that Petitioner had entered the "removal period," under 8
26 U.S.C. § 1231(a), on January 17, 2007, when the Ninth Circuit Court of Appeals lifted
27 his stay of removal.  (CV 07-1526-PHX-NVW, Doc. No. 20)  The Magistrate Judge

28

1   recommended denying the Petition, finding that, although Petitioner had been

2   detained for a period of time longer than the six months the United States Supreme

3   Court found presumptively reasonable in *Zadvydas v. Davis,* 533 U.S. 678 (2001),

4   Petitioner had not met his burden of demonstrating good reason to believe that there

5   was no significant likelihood of removal in the reasonably foreseeable future.  (CV

6   07-1526-PHX-NVW, Doc. No. 20.)

7   **II.    DISCUSSION**

8        **1.    Indefinite Detention**

9        Petitioner is subject to an administratively final order of removal.  See CV 07-

10   1526-PHX-NVW, Doc. No. 20, 24, 25 (finding same); See also 8 U.S.C. §

11   1101(a)(47)(B)(defining final order of deportation).    After completion of

12   administrative removal proceedings, the detention and release of an alien who has

13   been ordered removed are governed by 8 U.S.C. § 1231(a).  *Zadvydas v. Davis,* 533

14   U.S. 678, 683 (2001) (referring to section 1231 as the "post-removal-period detention

15   statute").

16        Petitioner is now in the "removal period," and has been since January 17, 2007.

17   When a final order of removal has been entered, the Government ordinarily secures

18   the alien's removal during a subsequent 90-day statutory removal period. *See* 8 U.S.C.

19   § 1231(a)(1)(A) (1996).  Where, as here, removal is not accomplished within the 90-

20   day removal period, the government may detain the alien past the removal period for

21   a period reasonably necessary to accomplish the removal.  *Zadvydas*, 533 U.S. at 682.

22        Thus, detention for more than 90 days pending removal is clearly authorized,

23   however, it is not without Constitutional limitation.  *Id.*

24        Interpreting 8 U.S.C. §1231(a)(6), the United States Supreme Court concluded

25   that six months is a "presumptively reasonable" period of detention pending removal.

26   *Zadvydas,* 533 U.S. at 701.  Extended detention beyond the removal period violates

27   due process; after six months, the government's authority to continue the detention

28

1   depends on whether there is a "significant likelihood of removal in the reasonably

2   foreseeable future." *Id*.

3          After the 6-month period, once the alien provides good reason to believe that

4   there is no significant likelihood of removal in the reasonably foreseeable future, the

5   Government must respond with evidence sufficient to rebut that showing. *Zadvydas*,

6   533 U.S. at 701.  The burden then shifts to the government, which must respond with

7   evidence sufficient to rebut Petitioner's showing.  *Id*.

8          To benefit from the holding in *Zadvydas*, the alien must cooperate with the

9   government's efforts to remove him.  "[W]hen an alien refuses to cooperate fully and

10  honestly with officials to secure travel documents from a foreign government, the

11  alien cannot meet his or her burden to show there is no significant likelihood of

12  removal in the reasonably foreseeable future."  *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th

13  Cir. 2003).   Respondents,  however,  do  not  contend  that Petitioner has not

14  cooperated in obtaining travel documents to assist with his removal. (Doc. No. 26,

15  at 3.)

16         In the instant case, Petitioner has been detained beyond the six-month period.

17  He argues  that  there  is  no  significant  likelihood  of  removal  in  the  reasonably

18  foreseeable future because Petitioner is in possession of a fax, dated December 13,

19  2007, that states that the Islamic Republic of Iran "would not be able to issue a travel

20  document for the above-mentioned person."  (Doc. No. 21, at 1.)

21         The Respondents argued  initially,  in  opposition,  that,  to  the  extent  the

22  document submitted by Petitioner is admissible, its weight is limited.  (Doc. No. 23,

23  at 2)  Respondents further argued that this "cryptic sentence copy of a letter signed

24  by one person for another ... does not show that the Iranian government has declined

25  to issue a travel document at all.  The Iranian government has not stated that it rejects

26  petitioner's citizenship, that it has rejected any of the identity documents or passports

27  submitted by the government or that it, in fact will not issue a travel document." (Id.)

28                                                    -7-

1    Detention and Deportation Officer Jaime C. Alfaro, in the Travel Document

2    Unit with the Headquarter's Office of Detention and Removal Operations, U.S.

3    Immigration and Customs Enforcement, within the Department of Homeland Security

4    in Washington, D.C., contacted Mr. Sajjadi, a Consular Officer in the Iranian Interest

5    Section, on December 13, 2007, and requested an update on the status of the travel

6    document request for Petitioner. (Doc. No. 23, Ex. 1, Declaration of Jaime C. Alfaro,

7    ¶ 1, 7, 8.) Mr. Sajjadi agreed to research the case and call Mr. Alfaro back. (Id., at

8    ¶ 8.) On January 14, 2008, Mr. Janahsoozan, an official of the Embassy of Pakistan,

9    Interest Section for the Islamic Republic of Iran, called Mr. Alfaro, and informed him

10   that Petitioner's travel document application[3] was forwarded to Tehran, Iran, for

11   review and verification by the Iranians. (Id., at ¶ 9.) Mr. Alfaro was informed by Mr.

12   Janahsoozan that this phase of the application takes at least six months. (Id.) It is Mr.

13   Alfaro's personal experience that the Iranian Interests Section normally takes from

14   six to eight months to respond to a travel document request, but can take longer. (Id.,

15   at ¶ 10.)

16   Following oral argument on February 14, 2008, Respondents clarified that a

17   record search revealed that the detention center in Eloy did not receive in the mail the

18   letter from the Iranian Interests Section of the Pakistan Embassy dated December 13,

19   2007, the letter faxed to Petitioner's counsel. (Doc. No. 26, at 1 and Attachment 2,

20   Declaration of Susan Lambert-Ray, ¶ 6.) Respondents did determine that the Pakistan

21   Embassy did recall sending the letter. (Doc. No. 26, at 2.) The detention facility did

22   receive a second letter on February 26, 2008, dated February 4, 2008, with a postmark

23   of February 21, 2008. (See Doc. No. 26, at 2, and Attachment 2, letter dated 2/4/08.)

24

25   [3] Petitioner's complete application for the issuance of a travel

26   document to effect Petitioner's removal was forwarded to the

27   Embassy of Pakistan on March 2, 2007. (Doc. No. 23, Ex. 2, Declaration of Susan Lambert-Ray, at ¶ 8.)

28   -8-

1    The letter states that because of an inability to authenticate a birth certificate, a travel

2    document will not be issued.  (Id.)

3         Respondents concede that presently, both the December 13, 2007 letter, and

4    the February 4, 2008 letter are in the format that appears to be the same as other final

5    decisions received from the Iranian Interests Section.  (See Doc. No. 26, Attachment

6    3, Declaration of Jaime C. Alfaro, ¶ 3.)

7         Respondents submit that, despite the apparent final denial letters, this Court

8    should be persuaded by the detailed declarations from Susan Lambert-Ray and Jaime

9    Alfaro regarding the government's extensive contact with the Iranian Interest Section

10   of the Embassy of Pakistan regarding its progress in obtaining travel documents to

11   remove Petitioner from the United States.  Respondents further argue that, when

12   determining the reasonableness of a time lapse after the six-month presumptively

13   reasonable period, this Court should take into account that the government of the

14   United States is dealing with a government with whom it does not have direct

15   diplomatic relations and must go through a third party, and should also take into

16   account the government's persistence in approaching the Iranian Interest Section at

17   the Embassy of Pakistan to assist upon their action in forwarding these documents.

18        Respondents further argue that, following receipt of the February 4, 2008

19   letter, Mr. Jahansoonzan of the Iranian Interests Section initiated a phone call on

20   February 26, 2008 to speak to Mr. Alfaro, and it was during this phone call initiated

21   by the Iranian Interests Section that Mr. Jahansoozan reassured Mr. Alfaro that

22   verification and review was continuing.  (Doc. No. 26, Attachment 3, Updated

23   Declaration of Jaime C. Alfaro, ¶¶ 1, 5)  Thus, Respondents submit that, based upon

24   these personal representations, which should carry more weight than the "cryptic"

25   letters, this Court should not consider that a final decision has been made by the

26   Iranian government on whether to issue travel documents in this case.

27

28

1    Mr. Alfaro received a return telephone call from Mr. Jahansoonzan on March

2    25, 2008. (Doc. No. 29, Attachment 1, Updated Declaration of Jaime C. Alfaro, ¶ 3.)

3    Mr. Alfaro directly asked Mr. Jahansoozan why the February 4, 2008 letter was issued

4    stating that a travel document would not be issued if verification was still pending.

5    (Id., at ¶ 4.)  Mr. Jahansoozan replied that it confused him, and that as far as he was

6    concerned, the Section is still awaiting verification of the birth certificate and that no

7    final decision about a travel document being issued has been made.  (Id.)  Mr. Alfaro

8    also asked if Mr. Jahansoozan could provide him with an exact date that the original

9    travel document request, original passport, and original birth certificate were

10   submitted to Tehran, but Mr. Jahansoozan could not provide him with a date.  (Id., at

11   ¶ 5.)  Mr. Jahansoozan could not explain why the verification was still ongoing and

12   refused to give any timeline for completion.  (Id., at ¶ 6.)

13   The Supreme Court, in *Zadvydas*, found that once removal is "no longer

14   reasonably foreseeable, continued detention is no longer authorized by statute."

15   *Zadvydas*, 533 U.S. at 699 (citations omitted).  "In answering that basic question, the

16   habeas court must ask whether the detention in question exceeds a period reasonably

17   necessary to secure removal.  It should measure reasonableness primarily in terms of

18   the statute's basic purpose, namely, assuring the alien's presence at the moment of

19   removal.  Thus, if removal is not reasonably foreseeable, the court should hold

20   continued detention unreasonable and no longer authorized by statute."  *Id*. at 699-

21   700.

22   The presumptively reasonable six month period has been exceeded, and

23   Petitioner has met his burden of demonstrating good reason to believe that there is no

24   significant likelihood of removal in the reasonably foreseeable future.   Two

25   documents, although one with somewhat questionable pedigree, have been received

26   in the form of what Respondents concede is considered a final decision denying travel

27   documents. Furthermore, although the December 13, 2007 letter was not received by

28                                          -10-

1   the detention facility, the Iranian Interest Section of the Pakistan Embassy has verified

2   that it did in fact send the letter.  The second letter was both sent and received in the

3   course of regular diplomatic business, and, but for further communications between

4   Mr. Jahansoozan and Mr. Alfaro, would be considered a final decision in and of itself.

5         Respondents present evidence in rebuttal, that these communications between

6   Mr. Jahansoozan and Mr. Alfaro are sufficient to demonstrate that removal is

7   imminent, and further submit that Petitioner has not provided any evidence of a

8   permanent obstruction to his deportation.

9         As the Supreme Court has explained, however, "for detention to remain

10   reasonable, as the period of prior postremoval confinement grows, what counts as the

11   'reasonably foreseeable future' would conversely have to shrink."  *Zadvydas*, 522

12   U.S. at 701.  As of completion of this Report and Recommendation, Petitioner has

13   been in the removal period for approximately one year and four months, or nearly ten

14   months beyond the period found presumptively reasonable in *Zadvydas*.  No doubt,

15   upon completion of objections to this Report and Recommendation, and consideration

16   by the District Court, that period will increase by, at a minimum, nearly another

17   month.

18         According to the affidavits submitted by Respondents, both Mr. Alfaro, and

19   Mr. Jahansoozan appear to be in agreement that it typically requires six months, or as

20   many as eight months, in some cases longer, for review and verification of travel

21   documents in response to a travel document request.  This is in conformity with the

22   six months reasonably presumptive period prescribed in *Zadvydas*.  *Id*. at 701.  The

23   Supreme Court recognized, however, that this presumption did not mean that "every

24   alien not removed must be released after six months.  To the contrary, an alien may

25   be held in confinement until it has been determined that there is no significant

26   likelihood of removal in the reasonably foreseeable future."  The Supreme Court

27   cautioned, however, that requiring continued detention as long as "good faith efforts

28                                      -11-

1   to effectuate ... deportation continue and [petitioner] failed to show that deportation
2   will prove 'impossible'' ..." would demand more than the Supreme Court's reading of
3   the statute could bear." *Id*. at 702 (internal citations omitted).

4          In this case, it is not entirely clear when the travel documents were delivered
5   to Iran. Mr. Alfaro's typical expectancy, however, is that the typical decision period
6   is six to eight months from the period of delivery of documents to the Pakistan
7   Embassy, which occurred on March 2, 2007. It has been over fourteen months, since
8   the delivery of documents to the Iranian Interests Section of the Pakistan Embassy,
9   and travel documents have not been issued.

10         There is, however, no confirmation that the application was forwarded to
11  Tehran, Iran, until January 16, 2008. Only four months have lapsed since that date,
12  but there is no way of knowing from the affidavits if it was submitted at any earlier
13  time, from March 2, 2007, until January 16, 2008. Presumably the two letters that
14  were sent denying travel documents were as a result of travel applications having
15  previously been submitted to Iran, at least sometime prior to December 13, 2007. Mr.
16  Jahansoozan states that they are typically forwarded to Tehran within two weeks of
17  receipt. Thus, based on usual practices, they would have been received in Tehran by
18  the end of March, 2007, and the receipt of the denial letter in December, 2007,
19  conforms with the experience of Mr. Alfaro in receiving an official response in six to
20  eight months from submission.

21         Although Mr. Alfaro is confident that a final decision has not yet been made,
22  and travel documents will issue, this confidence is based solely on conversations with
23  Mr. Jahansoozan, who admits that he is confused as to why a denial letter issued from
24  the Iranian Interests Section, does not know when the original travel document
25  request, original passport, and original birth certificate were submitted to Tehran,
26  could not explain why the verification was still ongoing, and refused to give any
27  timeline for completion. Mr. Alfaro does not provide any reason, such as prior

28

dealings or experience, that he has placed such confidence in one with such an apparent complete lack of knowledge, nor has he explained why he knows that review is ongoing.

Petitioner's confinement in the removal period is nearing sixteen months, and, short of proving that his removal is "impossible," there is little more Petitioner could demonstrate to show that there is no significant likelihood of removal in the reasonably foreseeable future.   In light of the two denial letters, and Mr. Jahansoozan's inability to even speculate as to when travel documents might be forthcoming, Respondent's have not come forth with evidence establishing that it is clear that there is a significant likelihood of removal, much less in the reasonably foreseeable future.

Accordingly, the Magistrate Judge recommends that the District Court enter an order granting Petitioner's Petition.

**2.      Bond Determination**

Respondents argued, in their Response to Petitioner's Objection to Notice of Intent to Deny, that, although regulations do not provide for bonding of aliens subject to mandatory detention under 8 U.S.C. § 1231(A)(6), such as Petitioner, in the event that some consideration was made for release or on conditions or on bond, Petitioner would bear the burden of proving that he was not a flight risk or a danger to the community, pursuant to 8 C.F.R. § 241(d)(1).  Respondents argued further, however, that immigration judges do not have jurisdiction to review bond determinations after a final order has been entered, nevertheless, such hearings have been held upon order of either the Ninth Circuit of Appeals or the District Court.  Respondents request that, if this Court would find that Petitioner's detention violates his rights, counsel urges the Court to allow an immigration judge in the first instance to hold a bond hearing to determine Petitioner's right to release or set the amount of bond.

1      Similarly, Petitioner argues that the cases indicate an immigration judge can
2  hold such a bond hearing.  The cases Petitioner cites (Doc. No. 27, at 5), are all
3  distinguished from this case, however, as they all involved petitioners who had not
4  yet entered the final removal period, and were granted a bond hearing pursuant to
5  *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005), which this Court has previously
6  established is not applicable to this case.  Neither Respondents nor Petitioner cited to
7  this Court any cases wherein a bond hearing was held following a determination,
8  under *Zadvydas*, that removal was unlikely in the reasonably foreseeable future.

9      The Ninth Circuit has held that the government may require a detainee to post
10 bond as a condition of being released pursuant to a determination under *Zadvydas* that
11 repatriation is not likely to occur in the reasonably foreseeable future.  See *Doan v.*
12 *INS*, 311 F.3d 1160 (9th Cir. 2002).  In *Doan*, the Ninth Circuit unambiguously held
13 that the government may require a detainee to post bond as a condition of being
14 released pursuant to a determination under *Zadvydas* that repatriation is not likely to
15 occur in the reasonably foreseeable future. *Doan*, 311 F.3d at 1161 ("a bond is well
16 within the kinds of conditions contemplated by the Supreme Court in *Zadvydas*, 533
17 U.S. at 6SS-69, 695-96... where the Court observed that 8 C.F.R. § 241.5 (2001)
18 establishes conditions of release").  The regulation at 8 C.F.R. § 241.5(b) (2003)
19 provides that "[a]n officer authorized to issue an order of supervision may require the
20 posting of bond in an amount determined by the officer to be sufficient to ensure
21 compliance with the conditions of the order, including surrender for removal." 8
22 C.F.R. § 241.5(b) (2003); see also 8 C.F.R. § 241.13(h)(1) (making the conditions of
23 8 C.F.R. § 241.5 applicable to aliens released under sec. 241.13).

24          *a.    Public Safety*

25      It is an altogether different matter, from requiring that bond be posted and an
26 order of supervision be required, to requiring that Petitioner appear before an
27 immigration judge and bear the burden of demonstrating entitlement to release.

28                                  -14-

1   Respondents assert that, pursuant to 8 C.F.R. § 241.4(d)(1), an alien with a

2   final order of removal must demonstrate "his or her release will not pose danger to the

3   community or to the safety of other persons or property..."

4   Once it has been determined that there is no significant likelihood that an alien

5   will be removed in the reasonably foreseeable future, the regulation that applies to

6   custody determinations is found at 8 C.F.R. § 241.13, which provides in relevant part

7   that, if a finding of no significant likelihood of removal is found, the Service "shall

8   promptly make arrangements for the release of the alien subject to appropriate

9   conditions, as provided in paragraph (h) of this section.

10   Regulations provide that the Service may require that the alien submit to a

11   medical or psychiatric examination prior to establishing appropriate conditions for

12   release or determining whether to refer the alien for further proceedings under §

13   241.14 because of special circumstances justifying continued detention.  The Service

14   is not required to release an alien if the alien refuses to submit to a medical or

15   psychiatric examination as ordered."  8 C.F.R. § 241.13(g)(1).  Section 241.14(a)(2)

16   grants jurisdiction to immigration judges and the Board to determine whether release

17   of an alien would pose a special danger to the public, as provided in 8 C.F.R. § 241.14

18   paragraphs (f) through (k), but do not have jurisdiction with respect to aliens

19   described in paragraphs (b), (c) or (d).  Paragraphs (f) through (k) describe aliens

20   determined to be specially dangerous; paragraphs (b), (c), and (d), describe aliens who

21   have highly contagious diseases, risk a serious adverse foreign policy consequence

22   upon release, or raise security or terrorism concerns.

23   Thus, under regulations, the only provision for a bond hearing before an

24   immigration judge is when there has been a determination that an alien poses

25   conditions of special danger to the public because of their proven history of violent

26   criminal activity and mental illness.  This condition, however, has been found invalid

27   in at least two instances.  In *Tran v. Mukasey*, 515 F.3d 478 (5th Cir. 2008), the Fifth

28

1   Circuit rejected the government's reading of *Zadvydas*, and found the Supreme Court

2   did not create an exception for detention of mentally ill aliens beyond the presumptive

3   six month post-removal period. *Id*. at 483. It further held the regulation authorizing

4   the continued detention of a removable alien having no significant likelihood of being

5   removed in the reasonably foreseeable future, and who had been determined

6   "specially dangerous" because of mental illness that would likely cause him to commit

7   future acts of violence, was not a permissible interpretation of 28 U.S.C. §

8   1231(a)(6)). *Id*. at 485.  In *Harnandez-Carrera v. Carlson*, ___ F Supp 2d. ___ (2008

9   WL 913375), the District Court for the District of Kansas found that the Supreme

10  Court has unequivocally stated that its interpretation and reading of 8 U.S.C. §

11  1231(A)(6) in *Zadvydas* "applies without differential to all three categories of aliens

12  that are its subject. *Harnandez-Carrera*, 2008 WL 913375 at 3. (quoting *Clark v.*

13  *Martinez*, 543 U.S. 371, 378 (2005));  See also *Tuan Thai v. Ashcroft*, 366 F.3d 790

14  (9th Cir.2004) (Supreme Court's interpretation of § 1231(a)(6) does not authorize

15  continued detention of alien suffering from harm-threatening mental illness for longer

16  than the presumptive six-month post-removal period authorized in *Zadvydas* where

17  the alien's removal from the United States is not reasonably foreseeable)

18          This Court finds the District Court's reasoning in Hernandez-Carrera

19  persuasive:

20          In *Zadvydas*, the Supreme Court stated that "once the flight risk
            justification [for continued detention under 8 U.S.C. § 1231(a)(6)
21          evaporates, the only special circumstance present is the alien's
            removable status itself, which bears no relation to a detainee's
22          dangerousness." *Zadvydas*, 533 U.S. at 691-92. ...

23          ... Once the presumptively reasonable six month period for removal of
            such an alien has expired, further detention pursuant to 8 U.S.C. §
24          1231(a)(6) is improper and the alien must be released subject to
            conditions of supervision. See 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5.
25          See also *Tran*, 515 F.3d at 485 (while sympathetic to the government's
            concern for public safety, the court has no power to authorize the
26          petitioner's continued detention under § 1231(a)(6).

27

28                                              -16-

1                Such conditions clearly can address public safety concerns. ...
2 Moreover, noncompliance with the conditions of release subjects an alien to criminal prosecution and penalties, including further detention.
3 See 8 U.S.C. § 1253(b). See also *Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision
4 with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

5                After *Zadvydas*, Congress acted to further protect the public from the release of aliens who threaten national security. If further
6 detention of aliens with mental illness or threat of violence is required to protect public safety, rather than the supervised release which is
7 currently authorized, Congress has not yet acted to provide such additional protection.

8 *Hernandez-Carrera v. Carlson* WL 913375, 4 -5  (D.Kan.,2008)

9      It is the Magistrate Judge's recommendation that, should the District Judge

10 find that Petitioner satisfies the conditions of  *Zadvydas*, there is no authority

11 establishing that the District Court can order a bond hearing be held to determine

12 whether or not Petitioner poses a danger to the public.  In fact, the Magistrate Judge

13 finds *Zadvydas* suggests the opposite, *i.e.*, the District Court must order Petitioner

14 released.  The District Court may order Respondents to release Petitioner under

15 appropriate conditions of supervision, including the posting of bond or other

16 reasonable conditions of supervised release, that, if violated, could result in further

17 detention. See *Doan*, 311 F.3d 1160.

18 **RECOMMENDATION**

19      For the foregoing reasons, the Magistrate Judge recommends that the District

20 Court GRANT Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1).

21      Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections

22 within ten days after being served with a copy of this Report and Recommendation.

23 A party may respond to another party's objections within ten days after being served

24 with a copy thereof. Fed.R.Civ.P. 72(b).   If objections are filed, the parties should

25 use the following case number: **CV 07-1526-PHX-NVW.**

26
27
28

1    If objections are not timely filed, then the parties' right to *de novo* review by

2  the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328

3  F.3d 1114, 1121 (9th Cir.) (*en banc*).

4    DATED this 13th day of May, 2008.

5

6

7  _____

8  Bernardo P. Velasco
   United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28