1  Bernadette Connolly, Cal. Bar No. 194633 (*Admitted Pro Hac Vice* )
   LAW OFFICES OF BERNADETTE W. CONNOLLY
2  1671 The Alameda, Suite 200
   San Jose, CA  95126
3  Tel.: (408) 287-0383
   Fax: (408) 287-4260
4
5  Attorneys for Petitioner
   Esfandiar Nikbakhsh-Tali

6

7              UNITED STATES DISTRICT COURT
                  DISTRICT OF ARIZONA
8                  PHOENIX DIVISION

9

10 In Re:                              )  Case No. CIV-07-01526-PHX-NVW
                                       )
11 Esfandiar Nikbakhsh-Tali            )  Immigration File No.: A20 039 482
                                       )
12                                     )
               Petitioner,             )  **PETITIONER'S MOTION FOR AWARD**
13                                     )  **OF ATTORNEY'S FEES, COSTS AND**
   v.                                  )  **EXPENSES PURSUANT TO**
14                                     )  **28 U.S.C. §2412:**
   Thomas Long, Officer in Charge, Eloy )  **POINTS AND AUTHORITIES IN**
15 Detention Center; Phillip Crawford, Field )  **SUPPORT OF THIS MOTION**
   Officer Director; Patricia A. Vroom, District )
16 Counsel; Alberto R. Gonzales, Attorney )
   General of the United States; Michael )
17 Chertoff, Secretary of Homeland Security )
                                       )
18                                     )
               Respondents.            )  **NOT DETAINED**
19 _____)

20

21        Petitioner, through counsel, hereby applies for attorneys' fees, costs and expenses,

22 pursuant to the Equal Access to Justice Act ("EAJA"), 28 United States Code ("USC") section

23 2412(d).  Petitioner seeks recovery of attorneys' fees, costs and expenses for the time

24 reasonably spent and incurred for his Petition for Writ of Habeas Corpus and resulting litigation

25 before this Court.  Pursuant to 28 U.S.C section 2412(d)(1)(A), this Court has jurisdiction to

26 adjudicate this application.

27

28                                    -1-

**RELEVANT FACTS AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of Iran.  On June 16, 1972, Petitioner's immigration status was adjusted to that of a legal permanent resident pursuant to section 245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255.   On February 3, 2003, Petitioner pled guilty in the Santa Clara County Superior Court to one count of Inflicting Corporal Injury on Spouse, in violation of California Penal Code § 273.5(a).  For this offense, Petitioner was sentenced to four months imprisonment in the country jail.  On December 3, 2003, he was sentenced to two years imprisonment after violating his probation.

Petitioner was thereafter referred to Immigration and Customs Enforcement ("ICE").  On October 4, 2004, the Government served Petitioner with a Notice to Appear, charging him with removability pursuant to section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), as one convicted of an aggravated felony at any time after admission, as well as pursuant to section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i),  as one convicted of a crime of domestic violence at any time after admission.  Additionally, Petitioner was served a Notice of Custody Determination on this date, informing him that he was to be detained pending a final determination by the Immigration Judge ("IJ") in his case, pursuant to section 236 of the INA and 8 C.F.R. § 236.

On January 20, 2005, the IJ denied Petitioner's applications for relief and ordered him removed to Iran.  The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal on April 26, 2005.  On May 4, 2005, the United States Court of Appeals for the Ninth Circuit granted Petitioner a temporary stay of removal after he filed a Petition for Review and Request

for Stay of Removal.  On January 17, 2007, the Ninth Circuit granted Petitioner's Motion to Dismiss his Stay of Removal.

Petitioner filed a Petition for Writ of Habeas Corpus on August 8, 2007.[1]  He also filed a Motion for Emergency Adjudication of the Writ which was denied on September 9, 2007.  On December 13, 2007, the Magistrate Judge issued a Report and Recommendation finding that Petitioner had entered the "removal period" under 8 U.S.C. § 1231(a) as of January 17, 2007, when the Ninth Circuit Court of Appeals lifted his stay of removal.  The Magistrate Judge recommended denying the Petition, finding that while Petitioner had been detained for a period of time longer than the six months the United States Supreme Court found presumptively reasonable in *Zadvydas v. Davis*, 533 U.S. 678 (2001), he had not met his burden of demonstrating good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future.

Ten days later, Petitioner filed an Objection to the Magistrate's Recommendation, with evidence showing that Iran would not issue travel documents to Petitioner, specifically a fax from the Interest Section at the Embassy of Pakistan indicating that Iran had rejected his request for travel documents.  Subsequently, the Court ordered the Government to responded to the Petitioner's Objection. The Government responded on January 29, 2008, still maintaining that the Petitioner had not met his burden of proof.

The Court then ordered oral argument on this case on February 14, 2008. Both parties appeared and after completion of the oral argument, the Court ordered further briefings. During oral argument, the Government maintained that the December 13, 2007 letter was insufficient

for the Petitioner to show that there was no significant likelihood of his removal to Iran in the foreseeable future.

In addition, after the oral argument, a second letter dated February 4, 2008 was sent by the Iranian Interest Section at the Embassy of Pakistan to the ICE detention facility in Eloy, Arizona stating that  the authenticity of Petitioner's birth certificate could not be established and, therefore, no travel document would be issued.

 The Government maintained in their February 29, 2008 Supplemental Brief that these letters were not sufficient for Petitioner to meet his burden in showing that there was good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future.  It maintained that the letters were "cryptic," while at the same time admitting that the letters were in a format the same as other final decisions received from the Iranian Interests Section.  The Government instead urged the Court to give more weight to alleged personal verbal representations of an official of the Iranian Interest Section that the adjudication of Petitioner's application for travel papers was continuing.

Petitioner filed a Supplemental Brief on March 7, 2008 . The Petitioner maintained that he had established that there is no substantial likelihood of Petitioner's removal from the United States in the foreseeable future and that he should be either released or at the very least afforded a bond hearing before an Immigration Judge.

On April 2, 2008, this Court rejected the Magistrate's Report and Recommendation, referring the matter back to the Magistrate to consider Petitioner's evidence.  On May 14, 2008,

---

[1] On September 6, 2006, Petitioner filed his first Petition for Writ of Habeas Corpus; however, the petition was denied as being premature because at the time of the petition, less than 180 days had passed since the Ninth Circuit granted Petitioner's request to withdraw his request for a stay of removal.

Motion for Attorney's Fees

the Magistrate issued a new Report and Recommendation, finding that Petitioner had met his

burden in showing that his removal was not reasonably foreseeable, and recommending that the

Court grant Petitioner's Petition for Writ Habeas Corpus.  On May 30, 2008, the Government

filed a Suggestion of Mootness with the Court, requesting that the petition be deemed moot

because the Respondents "decided to release petitioner on conditions."  This Court denied the

Respondents' motion, accepted the Magistrate's Report and Recommendation, and granted

Petitioner's Petition for Writ of Habeas Corpus on June 4, 2008.

**ARGUMENT**

**I.     THE EQUAL ACCESS TO JUSTICE ACT REQUIRES RESPONDENTS PAY
       FOR PETITIONER'S ATTORNEYS' FEES, COSTS AND EXPENSES.**

**A.     EAJA Applies to Petitioner's Application.**

Petitioner requests attorneys' fees, costs and expenses pursuant to the Equal Access to

Justice Act, as codified in 28 U.S.C. § 2412.  EAJA provides that

> [A] court shall award to a prevailing party other than the United States fees and other
> expenses ... incurred by that party in any civil action ... including proceedings for
> judicial review of agency action ... unless the court finds that the position of the United
> States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

 The Ninth Circuit Court of Appeals has applied EAJA to immigration matters involving

custody.  *See, e.g., Ratnam v. INS*, 177 F.3d 742 (9th Cir. 1999).

**B.     Petitioner Meets the Requirements of EAJA to Receive Attorneys' Fees and Costs.**

**       1.     Petitioner's motion is timely**

EAJA requires fee applications to be filed within 30 days of "final judgment in the

action."  28 USC § 2412(d)(1)(B).  "Final judgment" is defined as one "that is final and not

appealable." *See* 28 U.S.C. § 2412(d)(2)(G) (1988). Applications for fees under EAJA can thus be "filed and considered any time after final judgment is entered by the district court, but no later than 30 days following the entry of a final, non-appealable judgment from the appellate court." *Poole v. Rourke*, 779 F. Supp. 1546, 1561 (E.D. Cal. 1991)*; Al-Harbi v. INS*, 284 F.3d 1080 (9th Cir. 2002).  This Court issued its final order on June 4, 2008.  Since this application is being submitted before the expiration of the 60-day time period for filing an appeal, it is timely.

> **2.     Petitioner is a "prevailing party"**

As a preliminary matter, Petitioner is properly a "party" under EAJA in that he is an individual whose net worth did not exceed $2,000,000 at the time the action was filed.  *See Declaration of Petitioner.*

In addition, Petitioner is a "prevailing party" under 28 U.S.C. § 2412(d).  EAJA does not define what the term "prevailing party" means.  However the Supreme Court in *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598 (2001), cites to the historical requirement of a "material alteration of the legal relationship of the parties" as a condition precedent of a "prevailing party" fee award, holding that "enforceable judgments on the merits and court-ordered consent decrees create" the requisite material alteration. *Id.* at 604; *see also Ali v. Gonzales*, 486 F. Supp. 2d 1197 (9th Cir. 2007).  The Ninth Circuit has also clarified that a petitioner is a prevailing party for EAJA purposes if he "succeed[s] on [a] significant issue in litigation which achieved some of the benefit [he] sought in bringing suit."  *Carbonell v. Immigration and Naturalization Service,* 429 F.3d 894 (9th Cir. 2005).

Motion for Attorney's Fees

It is not necessary that a party who seeks to avoid removal actually succeed in that goal in order to achieve "prevailing party" status for EAJA purposes.  *See Ali*, 486 F. Supp. 2d at 1202.   In *Ali v. Gonzales* the Ninth Circuit found that four individuals from Somalia were prevailing parties because they secured their release from custody, even though the Supreme Court later ruled that the Government had the authority to remove individuals to Somalia without the necessity of obtaining the acceptance of the removal country's government.  *Id*. at 1202-1203.  The Court reasoned that in being ordered to release the petitioners from custody pursuant to *Zadvydas v. Davis,* 533 U.S. 678  (2001), the Government was required to do something directly benefitting the petitioners that they otherwise  would not have had to do.  *Id.* at 1203-1204.   *See also Vacchio v. Ashcroft*, 404 F.3d 663 (2d Cir. 2005) (conferring "prevailing party" status upon a petitioner who obtained his release via a habeas petition from detention pending a determination of his immigration status).

In the case at bar, Petitioner similarly sought a writ of habeas corpus pursuant to *Zadvydas.*  He was successful in obtaining release from custody and therefore is a "prevailing party" under Ninth Circuit law for EAJA purposes.[2]

**C.     Respondents' Position Was Not Substantially Justified, Nor is an Award of Attorneys' Fees and Costs Unjust.**

Once a petitioning party establishes prevailing party states, the Government can avoid payment of fees only if it can show that is pre-litigation conduct and litigation position were "substantially justified."  In order to meet this heavy burden of proof, the Government must show that its position has a reasonable basis both in law and in fact.  *Pierce v. Underwood*, 487

---

[2] The Government cannot claim that their "Suggestion of Mootness" negates Petitioner's prevailing party status.  While Respondents asserted in their motion that they "decided to release petitioner on conditions," this Court clarified in its June 4, 2008 Order that "Respondents' voluntary compliance with an adverse judicial decision does not moot the case."

U.S. 552, 565 (1988).  The Supreme Court has clarified that the "single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee eligibility." *Commissioner, INS v. Jean*, 496 U.S. 154, 160 (1990).  *See also Roanoke River Basin Ass'n. v. Hudson*, 991 F. 2d 132, 138 (4th Cir. 1993) ("*Jean* instructs that a single finding of governmental misconduct compelling a party to resort to litigation *or to prolong litigation* can open the door to recovery under EAJA.")(emphasis added).

Once the court determines that the government's position lacks substantial justification, the prevailing party is presumptively eligible for fees for all phases of the federal case, unless the prevailing party has "unreasonably protracted" a portion of the litigation, which would warrant exempting fees for that portion of the litigation from the award.  28 U.S.C. § 2412(d)(2)(D); *Commissioner, INS*, 496 U.S. at 161 ("Thus, absent unreasonably dilatory conduct by the prevailing party in 'any portion' of the litigation which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action.").

1.      **The Government's position that Petitioner did not provide good reason to believe that there was no significant likelihood of removal to Iran in the reasonably foreseeable future was substantially unjustified.**

The authority of the Department of Homeland Security to detain an alien subject to removal charges is found in 8 U.S.C. sections 1226 and 1231.  Once removal proceedings have been completed, detention and release of the alien are governed by section 1231.  When a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory removal period.  Where, as here, the removal is not accomplished within the 90-day period, the Government may detain the alien past the removal

period.  However, the Supreme Court has held that section 1231(a)(6) does not authorize the indefinite detention of removable aliens. *See Zadvydas*, 533 U.S. 678.  Rather, the Court found that the statute limits "an alien's post-removal period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id*. at 689.  To guide lower courts, the Court held that a six-month detention is presumed reasonable. *Id.* at 700.

After six months, the Government's authority to continue to detain an alien depends on whether there is "a significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.  Once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, it is the Government's burden to provide sufficient evidence to rebut that showing. *Id.*

As of January 17, 2007, Petitioner entered the removal period.  Petitioner submitted two letters from the Iranian Interest Section stating that Iran would not issue travel documents to Petitioner.  Respondents first argued that the December letter was "cryptic" because it did not show that the Iranian government has stated that it "declined to issue a travel document at all." *See  Response to Petitioner's Objection to Notice of Intent to Deny*, Doc. No. 23 at 2. Petitioner's second letter from the Iranian Interest Section clearly stated that the authenticity of Petitioner's birth certificate could not be established and, therefore, no travel document will be issued.  Nonetheless, the Government maintained that the letter should not be given much evidentiary weigh *even though it admitted that the letter was in a format that ICE currently considers as a final decision.  See Respondents' Supplemental Brief,* Doc. No. 26 at 2.  Rather, the Government urged the Court to consider the alleged telephone conversation between Mr. Jahansoozan at the Iranian Interests Section and Mr. Alfaro at ICE.

Motion for Attorney's Fees

CIV-07-01526-PHX-NVW2

1    As the Magistrate pointed out, while Mr. Alfaro was confident that a final decision had

2    not been made, that confidence

4    > was based solely on conversations with Mr. Jahansoozan, who admit[ted] that he [was]
     > confused as to why a denial letter issued from the Iranian Interests Section, [did] not
5    > know when the original travel document request, original passport and original birth
     > certificate were submitted to Tehran, could not explain why the verification was still
6    > ongoing, and refused to give any timeline for completion.

7    *Report and Recommendation*, Doc. 31 at 12.  The Magistrate also added that Mr. Alfaro did not

8    provide any reason for placing "such confidence in one with such an apparent complete lack of

9    knowledge," nor did he explain why he believed that the review was ongoing.  *Id.* at 13.

11    The Government's position was substantially unreasonable because alleged telephone

12    conversations, which were vague and unfounded, took precedent over letters in a format

13    recognized as a final decision.  The Government unduly increased Petitioner's standard of

14    proof, namely, the Government essentially argued that Petitioner show that he would *never* be

15    removed to Iran rather than show good reason to believe that there is no significant likelihood

16    of removal in the reasonably foreseeable future.  By maintaining so, the Government needlessly

17    prolonged litigation in Petitioner's case and detained Petitioner for more than ten months

18    beyond the period found to be presumptively reasonable in *Zadvydas*.

20    **2.    There are no special factors which would make an award to Petitioner
          unjust**

22    The "special circumstances" provision of EAJA allows a court to deny an award for

23    equitable considerations, such as unclean hands, or when there are close and novel questions.

24    *See Taylor v. U.S.*, 815 F. 2d 249, 252-54 (3d Cir. 1987); *National Truck Equip. Ass'n. v.*

25    *NHTSA*, 972 F.2d 669, 671 (6th 1991).   It is the Government's burden to assert any "special

26    circumstances" which would make an award unjust.  *See INS v. Jean*, 496 U.S. 154, 160

27    (1990).  Nevertheless, Petitioner asserts that there are no such special circumstances in his case.

-10-

**II.     ATTORNEYS' FEES SHOULD BE AWARDED IN EXCESS OF THE STANDARD RATE OF $125 PER HOUR AND SHOULD INCLUDE TRAVEL EXPENSES**

**A.     Petitioner's Attorneys' Fees Can Be Adjusted to Reflect Cost in Living Increases**

The EAJA provides that "attorneys' fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(B)(ii).

The Ninth Circuit accounts for an increase in the cost of living by multiplying the $125 statutory rate by the annual average Consumer Price Index for all Urban Consumers (CPI-U) for the years in which counsel's work was performed and then dividing by the CPI-U figure for March 1996, the effective date of EAJA's $125 statutory rate.  *See Thangaraja v. Gonzales*, 428 F.3d 870, 877 (9th Cir. 2005); *Sorenson v. Mink*, 239 F.3d 1140, 1147-49 (9th Cir. 2001).  According to this calculation, Petitioner should be awarded at a minimum fees at the hourly rate of $177.70 for work performed in 2007 and $180.54 for work performed in 2008.[3]

**B.     The "Special Factor" of Attorney Bernadette Connolly's Qualifications Justifies a Higher Rate of  $250 per Hour**

Attorney rates may also be increased if a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.  28 U.S.C. § 2412(d)(2)(A)(ii).  The Supreme Court has addressed the term "special factor" for EAJA purposes:

> We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general

[3] According to the Bureau of Labor Statistics, see www.bls.gov, the March 1996 CPI-U for the San Francisco-Oakland-San Jose, California area was 152.9.  The annual average for 2007 was 217.361, and the average for 2008, to date, is 220.84.

1
2
> lawyerly knowledge and ability useful in litigation.  An example of the former would be
> an identifiable practice specialty such as patent law, or knowledge of foreign law or
> language.

3 *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).   The Ninth Circuit has recognized that a

4 specialized knowledge of immigration law could warrant enhanced attorney rates.  *See Rueda-*

5 *Menicucci v. INS*, 132 F.3d 493 (9th Cir. 1997) ("[A] specialty in immigration law could be a

6 special factor warranting an enhancement of the statutory rate if that specialty is 'needful for

7 the litigation in question'."); *Thangaraja*, 428 F.3d at 876 (finding that an enhanced hourly rate

8 is warranted if counsel possesses some "distinctive knowledge" or "specialized skill" necessary

9
10 to litigate the case).

11
12     Petitioner's counsel, Bernadette Connolly, possesses the specialized skill and

13 knowledge in immigration law meriting an award above the statutory rate.  She practices

14 exclusively in immigration and nationality law and has been doing so since 1998.  Such

15 specialized skill and knowledge was necessary for the case in that it presented several

16 complicated immigration issues, including detention pursuant to the INA, due process and stays

17 of removal. In addition, as explained in the attached declaration, the skills and knowledge

18
19 required for this case are not available elsewhere at the statutory rate in the Bay Area.

20 **C.     Petitioner's Costs Include Travel Expenses**

21
22     Section 2412(a) states that "a judgment for costs, as enumerated in section 1920 of this

23 title . . . may be awarded to the prevailing party in any civil action by or against the United

24 States . . . ."  The Ninth Circuit has upheld an award of costs under EAJA for telephone calls,

25 postage, air courier, and attorney travel expenses.  *See, e.g., International Woodworkers of*

26 *America, AFL-CIO v. Donovan,* 792 F.2d 762, 767 (9th Cir. 1986).  The court stated that these

27 costs, which are ordinarily billed to a client, are routine under all other fee statutes.  *Id.*; *Poole*

28

-12-

*v. Rourke*, 779 F. Supp. 1546 (E.D. Cal. 1991).  *See also Local 3-98, Int'l Woodworkers v. Donovan,*  580 F. Supp. 714 (N.D. Cal. 1984) (finding that an award pursuant to 28 U.S.C. § 2412(d) may compensate a prevailing party for attorneys' fees incurred for work performed before the effective date of the statute, for counsel's out-of-pocket travel and telephone costs, and for work connected to the motion for attorneys' fees); *Palila v. Hawaii Dept. of Land and Natural Res.,* 512 F. Supp. 1006, 1010 (D. Haw. 1981) ("In addition, [under the Endangered Species Act] plaintiffs are awarded, *as part of reasonable attorneys' fees,* $ 621.50 as reimbursement for travel costs from San Francisco to Honolulu for oral argument.") (emphasis in original).

Petitioner's counsel had to travel from her office in San Jose, California to this Court in Arizona to litigate Petitioner's writ of habeas corpus.  Petitioner therefore requests reimbursement for travel costs in the  amount of $336 as well as other costs for filing fees, copying and telephone calls in the amount of $224.17.

## CONCLUSION

Because Petitioner is the prevailing party against Respondents, whose position was not substantially justified, Petitioner is entitled to attorney's fees and costs under EAJA.

Respectfully submitted this 4th day of July 2008

**s/Bernadette Willeke Connolly**

Bernadette Willeke Connolly
Attorney of the Petitioner

# EXHIBIT A

1 │ Bernadette Connolly, Cal. Bar No. 194633 (*Admitted Pro Hac Vice* )
  │ LAW OFFICES OF BERNADETTE W. CONNOLLY
2 │ 1671 The Alameda, Suite 200
  │ San Jose, CA  95126
3 │ Tel.: (408) 287-0383
  │ Fax: (408) 287-4260
4 │
  │ Attorneys for Petitioner
5 │ Esfandiar Nikbakhsh-Tali
6 │
7 │                    **UNITED STATES DISTRICT COURT**
  │                        **DISTRICT OF ARIZONA**
8 │                         **PHOENIX DIVISION**
9 │

10 │ In Re:                              ) Case No. CIV-07-01526-PHX-NVW
   │                                     )
11 │ Esfandiar Nikbakhsh-Tali            )  Immigration File No.: A20 039 482
   │                                     )
12 │                                     ) **DECLARATION OF BERNADETTE W.**
   │                                     ) **CONNOLLY IN SUPPORT OF**
13 │                  Petitioner,        ) **PETITIONER'S MOTION FOR AWARD**
   │                                     ) **OF ATTORNEY'S FEES, COSTS AND**
14 │ v.                                  ) **EXPENSES PURSUANT TO**
   │                                     ) **28 U.S.C. §2412:**
15 │ Thomas Long, Officer in Charge, Eloy )
   │ Detention Center; Phillip Crawford, Field )
16 │ Officer Director; Patricia A. Vroom, District )
   │ Counsel; Alberto R. Gonzales, Attorney )
17 │ General of the United States; Michael )
   │ Chertoff, Secretary of Homeland Security )
18 │                                     )          **NOT DETAINED**
   │                                     )
19 │                 Respondents.        )
   │ _____ )

20 │
21 │
22 │        1. I, Bernadette Willeke Connolly, am an attorney at law duly admitted to practice
23 │ before all the courts of the State of California and all United States Immigration Courts as well
24 │ as before the Board of Immigration Appeals.  I am also admitted to practice before the United
25 │ States District Courts of the Southern, Central and Northern Districts of California and the
26 │
27 │
28 │                                            -1-

Ninth Circuit. I am admitted *pro hac vice* before this Court in the instant case on August 8, 2007.

2. I was admitted to the State Bar of California in March 1998 and have since practiced exclusively Immigration and Nationality Law. The focus of my practice is on family-based immigration and deportation/removal defense at all levels from Immigration Court through the Board of Immigration Appeals and through Petitions for Review before the Ninth Circuit. I have a published Ninth Circuit case, *Shire v. Ashcroft,* 388 F.3d 1288 (9th Cir. 2004).

3. I have practiced before several Immigration Courts in the United States, including San Diego, San Pedro, Los Angeles, El Centro and San Francisco in California, in Arizona, Texas and Georgia. I have represented approximately 175 clients in deportation/removal proceedings before the United States Immigration Courts . I was the EOIR liaison of the Santa Clara Chapter from 2005-2006. I am also a member of the Federal Bar Association. Further, I provide *pro bono* mentoring to attorneys who provide *pro bono* representation in immigration cases before the Ninth Circuit and  participate myself in the Ninth Circuit *pro bono* program. I have also handled over thirty cases in the Ninth Circuit Court of Appeals and more than 10 cases in writ of habeas of corpus  and writ of mandamus proceedings before various District Courts in California.

4. I am Esfandiar Nikbakhsh-Tali's  immigration lawyer and I am familiar with the history of his case. I have represented him before the Immigration Court in Eloy, Arizona and the subsequent appeal before the Board of Immigration Appeals. I am also currently representing him before the Ninth Circuit in his Petition for Review.

5.In cases where I charge an hourly fee, my hourly fee is $250. This is well within the range of fees charged by immigration attorneys with my level of experience in the Bay Area.

-2-

The case at bar requires a detailed knowledge regarding the complicated case law in the arena of prolonged detention of aliens such as the Petitioner in this case.

6. While there are many of immigration attorneys who handle litigation before the Immigration Courts and the Board of Immigration Appeals, there a few immigration attorneys who venture into the area of immigration related litigation in the federal district courts. To the best of my knowledge, I am one of the very few attorneys in San Jose, California who handles these types of cases.

7. The Federal Public Defenders Office in San Jose, California consults with me in case which involve complicated immigration-related issues in the context of immigration consequences of criminal convictions for non-citizens.

8. This case required an extensive amount of research and time to prepare. I have attached an accounting of the hours in a separate sheet. Also attached is a list of expenses incurred with the case.

I affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted this 4th day of July 2008

**s/Bernadette Willeke Connolly**

Bernadette Willeke Connolly
Attorney of the Petitioner

-3-

# EXHIBIT B

## Declaration of Esfandiar Nikbakhsh-Tali in Support of Motion for Attorney's Fees

My name is Esfandiar Nikbakhsh-Tali. I was born on November 19, 1952 in Iran. I am currently residing at 1202 Palm Ridge Lane, San Jose, California 95123.

I am making this declaration in support of my application applies for attorneys' fees, costs and expenses, pursuant to the Equal Access to Justice Act ("EAJA"), 28 United States Code ("USC") section 2412(d). I am seeking recovery of attorneys' fees, costs and expenses for the time reasonably spent and incurred for his Petition for Writ of Habeas Corpus and resulting litigation before this Court. I hereby declare that my assets do not exceed $2,000,000.

I affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Date: July 4, 2008

_____
Esfandiar Nikbakhsh-Tali

# EXHIBIT C

ATTORNEY'S FEES AND EXPENSES

**Case:**  **Nikbaksh-Tali, Esfandiar v. Alberto R. Gonzales et al.,
Habeas Corpus, District Court (Phoenix, AZ)**
2:07-cv-01526-NVW

| DATE | DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|
| 07/27/07 | Legal Research on new case law regarding prolonged detention of aliens | 7.5 | $250.00 | $1,875.00 |
| 07/28/07 | Draft of Writ of Habeas Corpus and P&A | 5 | $250.00 | $1,250.00 |
| 07/30/07 | Edit Writ of Habeas Corpus and P& A  and prepare exhibits | 3 | $250.00 | $750.00 |
| 07/30/07 | Prepare Motion for Emergency Adjudication of  Writ | 0.5 | $250.00 | $125.00 |
| 09/04/07 | Review Order denying Motion | 0.2 | $250.00 | $50.00 |
| 10/23/07 | Review Respondent's Response to Petition for Habeas | 0.5 | $250.00 | $125.00 |
| 12/13/07 | Review  Report and Recommendation /Intent to Deny | 0.3 | $250.00 | $75.00 |
| 12/23/07 | Prepare and file Objection to Notice of Intent to Deny | 1 | $250.00 | $250.00 |
| 01/25/08 | Review Respondents' Response to Petitioner's Objections | 0.5 | $250.00 | $125.00 |
| 02/11/08 | Prepare for  Oral Argument on 02/14/2008 and Mock Hearing | 6 | $250.00 | $1,500.00 |
| 02/13/08 | Travel from San Jose, CA to Phoenix, AZ | 5 | $125.00 | $625.00 |
| 02/14/08 | Oral Argument before the District Court in Phoenix | 0.75 | $250.00 | $187.50 |
| 02/14/08 | Travel From Phoenix, AZ to San Jose, CA | 5 | $125.00 | $625.00 |
| 03/01/08 | Review and Research Respondents' Supplemental Brief | 1.5 | $250.00 | $375.00 |
| 03/07/08 | Prepare Petitioner's Supplemental Brief | 1.75 | $250.00 | $437.50 |
| 03/27/08 | Review of Respondents' Response to Petitioner's Supplemental Brief | 0.25 | $250.00 | $62.50 |
| 04/03/08 | Review Order rejecting Recommendation of Magistrate | 0.25 | $250.00 | $62.50 |
| 05/14/08 | Review Report and Recommendation of Magistrate | 0.5 | $250.00 | $125.00 |
| 05/29/08 | Review Respondents' Request for Extension of Time | 0.25 | $250.00 | $62.50 |
| 06/04/08 | Review Order Adopting Report and Recommendations | 0.3 | $250.00 | $75.00 |
| 06/23/08 | Legal research re attorney's fees under EAJA-specifically, substantially justified, attorney fee rates and travel cost | 4 | $250.00 | $1,000.00 |
| 06/24/08 | Research on "prevailing party" | 1 | $250.00 | $250.00 |
| 06/26/08 | Draft Motion for Attorney's fees | 4 | $250.00 | $1,000.00 |
| 06/26/08 | Edit Motion for Attorney's fees | 1 | $250.00 | $250.00 |
| 07/04/08 | Prepare Attorney's Declaration | 0.5 | $250.00 | $125.00 |
| | **EXPENSES INCURRED** | | | |
| 08/09/07 | Filing Fee for Writ of Habeas Corpus | | | $5.00 |
| 08/10/07 | Fee for Pro Hac Vice Admission to this Court | | | $100.00 |
| 02/13/08 | Southwest Airline Ticket for roundtrip from San Jose to Phoenix | | | $336.00 |
| | | | **TOTAL** | $11,828.50 |